GOOD SAMARITAN HOSPITAL AND HEALTH CENTER et al., Appellants,

v.

WRIGHT STATE UNIVERSITY, Appellee.

[Cite as *Good Samaritan Hosp. & Health Ctr. v.
Wright State Univ.* (1992), 82 Ohio App.3d 30.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–629.

Decided Aug. 25, 1992.

*Thompson, Hine & Flory, David M. Rickert* and *Thomas A. Knoth,* for appellants.

*Lee Fisher,* Attorney General, and *Gregg H. Bachmann,* Assistant Attorney General, for appellee.

---

TYACK, Judge.

On September 13, 1985, Wilton Whitlow filed a lawsuit against Good Samaritan Hospital and Health Center ("Good Samaritan"), Parke Davis, and several doctors. Two of the doctors named as defendants in the lawsuit were Dennis Aumentado and Gilbert Wergowske. Dr. Aumentado was a resident employed by the Wright State University School of Medicine ("Wright State") and assigned to the Good Samaritan Ambulatory Care Unit. Dr. Wergowske was the director of the Care Unit as a part of his duties with Wright State, where he was a member of the faculty of its School of Medicine. As to the doctors, the lawsuit alleged professional negligence.

On April 17, 1986, summary judgment was granted on behalf of Dr. Wergowske. Approximately four months later, Dr. Aumentado was dismissed from the lawsuit.

The litigation dragged on for several years and ultimately was resolved as to Good Samaritan with a jury verdict in its favor rendered on February 23, 1990.

Over three years after the lawsuit was filed and over two years after Drs. Wergowske and Aumentado were removed from the lawsuit, an attorney for Good Samaritan sent a letter to counsel for Wright State. The letter indicated, in pertinent part, the following:

"This letter will serve to advise you that should any judgment be rendered against Good Samaritan Hospital by virtue of the actions of Drs. Wergowske and/or Aumentado, Good Samaritan Hospital will look to Wright State Univer-

sity School of Medicine and the State of Ohio for indemnification and/or contribution."

Almost a year after the favorable jury verdict, Good Samaritan and its insurer, M.S.J. Insurance Company ("MSJ"), filed an action in the Ohio Court of Claims naming Wright State University as defendant and asking that they be reimbursed the attorney fees and expenses incurred in defending against Wilton Whitlow's lawsuit. The total sought in the Ohio Court of Claims as so-called "indemnification" was almost $170,000.

Ultimately, summary judgment was granted in the Court of Claims on behalf of Wright State. At the same time, a summary judgment motion filed on behalf of Good Samaritan and MSJ was overruled. Good Samaritan and MSJ (hereinafter "appellants") have appealed, assigning three errors for our consideration:

*"FIRST ASSIGNMENT OF ERROR*

"The Ohio Court of Claims Erred When It Denied Plaintiffs' Motion for Summary Judgment.

*"SECOND ASSIGNMENT OF ERROR*

"The Ohio Court of Claims Erred When It Granted Defendant's Motion For Summary Judgment.

*"THIRD ASSIGNMENT OF ERROR*

"The Ohio Court of Claims Erred When It Denied Plaintiffs' Motion To Reconsider."

All three assignments of error involve common issues and, hence, will be addressed jointly.

The relationship between appellants and Wright State was defined by a "memorandum of understanding" originally executed in late 1983 and suppos-edly renewed annually. The memorandum makes no mention of where liability should fall or what responsibilities are to be borne by whom in case of a lawsuit alleging professional negligence of someone affiliated with Wright State but performing services at Good Samaritan. Thus, no written or express agreement for indemnification existed.

Appellants assert that an implied agreement for indemnification should be found or a common-law obligation to indemnify them should be interpreted to apply. Appellants go on to suggest that this indemnification should include reimbursement of the costs of defense of a lawsuit which is ultimately found to be without merit.

Appellants specifically cite Restatement of the Law 2d, Torts (1965), Section 914, as authority for their assertion. Section 914, "Expense of Litigation," reads:

"(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.

"(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

Section 914 does not apply because the record here does not establish that the doctors from Wright State ever committed a tort. Only in situations where "the tort of another" has caused an action to be initiated does Section 914 even set forth the possibility of recovering the costs of litigation. Section 914 is not a basis for developing a theory of indemnification from innocent parties and thus fails to support appellants' position.

The case law from Ohio set forth by appellants related to indemnification uniformly involves situations where the existence of a tortfeasor or other form of wrongdoer has been established. In certain circumstances, the primary tortfeasor or wrongdoer has been held liable for the expenses of a third party found vicariously liable; but, none of the Ohio cases involves implying a responsibility to defend where the existence of a primary tortfeasor has not been established.

We especially are inclined not to assess the costs of litigation against the employer of a physician where the hospital that seeks the reimbursement does so for the first time almost one year after the litigation has been completed, with no prior notice that the physician or the physician's employer will be considered even partly responsible for the costs of litigation. Appellants did not ask Wright State or the state of Ohio to defend the lawsuit or to participate in the defense. The only evidence in the record indicating any thoughts of appellants' to seek funds from Wright State or the state of Ohio is a unilateral notice letter that mentions potential claims for indemnification of a judgment in the event that a judgment had been obtained against Good Samaritan. The letter makes no mention of the costs of litigation.

Presumably, Good Samaritan pays significant premiums to MSJ to insure itself against losses and costs resulting from the filing of lawsuits alleging professional negligence. This insurance is intended to cover situations such as that presented by the lawsuit initiated by Wilton Whitlow. Good Samaritan in essence grants staff privileges to doctors affiliated with Wright State in return for Wright State's running its Internal Medicine Ambulatory Care

Unit. If appellants' theory is accepted, appellants could seek "indemnification" from any doctor on staff and any entity with which the doctor is affiliated for the costs of defending against a lawsuit utterly lacking in merit. One can only wonder if any physician would consent to be on the staff of Good Samaritan under such circumstances.

In general, where a written agreement exists between a hospital and an entity which provides medical services and that agreement makes no mention of where the costs of defending a negligence lawsuit will lie, we are not willing to imply an agreement which burdens the medical provider with the costs incident to defending the hospital in the lawsuit. That being so, appellants do not have a basis for recovery here, and the summary judgment for Wright State was appropriately granted.

Therefore, the three assignments of error are overruled and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

McCORMAC and DESHLER, JJ., concur.